UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIET C. GADDY,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C13-2016-JCC-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Juliet C. Gaddy appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 47 year old woman with a high school equivalent education. Administrative Record ("AR") at 38-39. Her past work experience includes employment as a housekeeper and maintenance janitor. AR at 39-40, 51. Plaintiff was last gainfully employed in May of 2012. AR at 40.

On October 12, 2010, plaintiff filed concurrent claims for SSI payments and DIB, alleging an onset date of August 1, 2007. AR at 197-204. For purposes of DIB, plaintiff's date last insured is December 31, 2013. AR at 215. Plaintiff asserts that she is disabled due to post traumatic stress disorder. AR at 239.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 98-101, 104-07, 110-21. Plaintiff's requested hearing took place on July 9, 2012. AR at 33-55. At the administrative hearing, plaintiff amended her alleged disability onset date to January 1, 2012. AR at 37.

On July 19, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could return to her past relevant work as a housekeeper and maintenance janitor. AR at 27-28. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On November 7, 2013, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Gaddy bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments

are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. §§ 404.1572, 416.972.

residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 19, 2012, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date.

3. The claimant has the following severe impairments: major depressive disorder, anxiety disorder, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work. She has the average ability to perform sustained work activities (i.e., can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., eight hours a day, for five days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. The claimant can make judgments on simple

> work-related decisions and can respond appropriately to supervision, co-workers and deal with changes all within a stable work environment. She cannot deal with the general public as in a sales/cashier position or where the general public is frequently encountered as an essential element of the work process such as telemarketing. Incidental contact with the general public is not precluded so long as the public is not a part of the work process.
>
> 6. The claimant is capable of performing past relevant work as a housekeeper and maintenance janitor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2007, through the date of this decision.

AR at 22-28.

## VI. ISSUES ON APPEAL

As identified in plaintiff's Opening Brief, the principal issues on appeal are:

> 1. Whether the ALJ erred in failing to properly address the opinion of the plaintiff's examining provider and in failing to provide adequate explanation for the weight assigned to this opinion.
>
> 2. Whether substantial evidence supports the ALJ's conclusion that plaintiff retains the residual functional capacity to perform the full range of work at all exertional levels limited only to the ability to perform unskilled work with incidental contact with the general public.
>
> 3. Whether the ALJ erred in finding the plaintiff less than credible.

Dkt. No. 16 at 2.

## VII. DISCUSSION

### A. The ALJ's Assessment of the Medical Evidence

Plaintiff takes issue with the ALJ's assessment of the medical evidence. Dkt. 16 at 4-7. Specifically, plaintiff argues the ALJ erred by rejecting the medical opinion of consultative examining psychiatrist Karen Ni, MD, that although plaintiff was capable of working part-time, plaintiff would probably need treatment to enable her to work full-time. AR at 27 (citing AR at 376 (Dr. Ni opining "[plaintiff] can work part time now. She may be able to work full

time within 6 months to a year if she gets psychiatric treatment and better yet by far is if she can clear her name.”)). Dr. Ni’s opinion is significant because the vocational expert testified there would be no work an individual could perform if that individual was unproductive or away from the work-site as much as 6 to 8 hours of the expected 40-hour work week. AR at 53.

The ALJ rejected Dr. Ni’s opinion regarding plaintiff’s employability because: (1) plaintiff’s impairments were present while plaintiff worked full time in the past; (2) plaintiff’s reports and presentation to Dr. Ni is not consistent with the observations of plaintiff’s treatment providers; and (3) Dr. Ni appears to base her opinions on plaintiff’s subjective reports. AR at 27. These are specific and legitimate reasons supported by substantial evidence in the record sufficient to reject the opinion of an examining psychiatrist. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

As a matter of law, more weight is given to a treating physician’s opinion than to that of a non-treating physician because a treating physician “is employed to cure and has a greater opportunity to know and observe the patient as an individual.” *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician’s opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). “This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.” *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

As a threshold matter, plaintiff argues that clear and convincing reasons are necessary to reject the opinion of Dr. Ni, because there is no other opinion evidence in the record. Dkt. 16 at 5. As defendant points out, however, Dr. Ni's opinion is contradicted by the medical opinions of non-examining psychiatrist Lisa Hacker, M.D., and non-examining psychologist Alex Fisher, P.h.D., who opined plaintiff has the functional capacity to perform full-time work

related activities. *See* AR at 61-63 (Dr. Hacker opining plaintiff not significantly limited in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."), 82-84 (Dr. Fisher opining plaintiff not significantly limited in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."). An ALJ may reject a controverted opinion of an examining psychiatrist by providing specific and legitimate reasons that are supported by the record. *Bayliss*, 427 F.3d at 1216.

Defendant argues that neither clear and convincing nor specific and legitimate reasons are required to reject the opinion evidence of an examining psychiatrist. Dkt. 18 at 10-11. Instead, defendant offers that reviewing courts must apply the "extremely deferential substantial evidence" standard of review, and must respect the Commissioner's rules regarding the rationale ALJ's should provide. Dkt. 18 at 10-11 (citing 42 U.S.C. § 405(g) and SSR 96-2p (decision must contain "specific reasons" for weight given treating source opinion, and must be "sufficiently specific to make clear" how the ALJ weighed evidence)). As discussed previously, the Ninth Circuit requires this Court in reviewing an ALJ's assessment of the medical evidence to apply the following standard: If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *See Reddick v. Chater*, 157 F.3d at 725.

Moreover, the Ninth Circuit recently denied the Commissioner's attempts to undermine a reviewing court's application of the clear and convincing standard in the context of reviewing an ALJ's treatment of a claimant's testimony. *See Garrison v. Col*vin, 759 F.3d 995, 1015 n. 18 (9th Cir. 2014) ("The government's suggestion that we should apply a lesser standard than "clear and convincing" lacks any support in precedent and must be rejected."). This Court

finds the Ninth Circuit's reasoning in *Garrison* to be equally persuasive in this context. For these reasons, this Court finds that specific and legitimate reasons supported by the record are required to properly reject Dr. Ni's medical opinion. *See Bayliss* , 427 F.3d at 1216 (9th Cir. 2005).

Turning to the substance of the ALJ decision, the first reason offered by the ALJ to reject Dr. Ni's opinion, that plaintiff's impairments were present while plaintiff worked full-time in the past, is supported by substantial evidence. AR at 27. The first mental health assessment referenced in the record occurred in September 2010. AR at 371. Three months later in December 2010, plaintiff was evaluated by Dr. Ni, who diagnosed post traumatic stress disorder, major depressive disorder, and anxiety disorder, and opined plaintiff may not be able to work on a full-time basis. AR at 372-76. At the time of these assessments, plaintiff was reportedly working part-time. AR at 372, 375-76; *accord* AR 228. Plaintiff's earnings from this period suggest that plaintiff was working just below substantial gainful levels. *See* AR at 212-14 (indicating plaintiff earned $3,960 in the fourth quarter of 2010, which is $40 below the presumptive threshold for substantial gainful activity ("SGA")); Program Operations Manual System ("POMS") DI 10501.015(B) (indicating the presumptive earnings threshold for SGA is $1,000 per month in 2010).

Beginning in early 2011, however, the record indicates that plaintiff's earnings increased, and that plaintiff worked at substantial gainful levels for approximately 12 months until December of 2011. *See* AR at 36-37 (plaintiff's attorney reporting plaintiff's average earnings during the second half of 2011 were equivalent to plaintiff's average earnings during the first half of the year, and plaintiff testifying that she worked less than full-time during this period), 212-14 (indicating plaintiff earned $4,095.00 in the first quarter of 2011, and $4, 355.00 in the second quarter of 2011); POMS DI 10501.015(B) (indicating the presumptive

earnings threshold for SGA is $1,000 per month in 2011). Plaintiff then testified that she worked reduced hours from January 2011 through May 2011, when her contract come to an end. AR at 40. For this reason, plaintiff amended her alleged disability onset date to January 1, 2012. *See* AR at 36-37.

Although the record indicates plaintiff was working less than 40 hours a week during 2011, the record supports that plaintiff's part-time work was performed at substantial gainful levels. Moreover, plaintiff testified that this work ended in May 2012 because her contract was up, and not for disability related reasons. AR at 40 ("It was just a contract and the contract was over. The Post Office was having… a lot of financial difficulties or something and they got rid of a lot of the contract workers and hired their own employees back.").

Although plaintiff's attorney argued at the hearing that plaintiff's hours were reduced in 2012 "because of health problems", AR at 37, no testimony was elicited from plaintiff to corroborate this assertion and no clarification was provided as to the nature of the "health problems" that lead to a reduction in plaintiff's hours in 2012. *See* AR at 40-41. Indeed, the only treatment visits that appear in the record from January 2012 to July 2012, the relevant period in this claim, concern urological/gynecological problems and hypertension. *See* AR at 408-14. There is no evidence in the record that plaintiff's mental health impairments worsened during this period.

For these reasons, the ALJ's rejection of Dr. Ni's opinion regarding plaintiff's ability to be employed due to plaintiff's demonstrated ability to work despite her impairments is legally sufficient. Plaintiff's work activities demonstrate that Dr. Ni's opinion regarding plaintiff's inability to work more in the future without treatment was incorrect.

B. <u>The ALJ's Residual Functional Capacity Determination</u>

Plaintiff also takes issue with the ALJ's RFC determination. Dkt. 16 at 7-9.

Specifically, plaintiff argues that the ALJ erred by failing to credit the medical opinion of Dr. Ni, and by finding plaintiff had the ability to interact appropriately with supervisors and coworkers and with the general public on an incidental basis. Dkt. 16 at 7-9.

An RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200(c). It is an administrative decision as to the most a plaintiff can do, despite her limitations. SSR 96-8p. The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," e.g., eight hours a day, five days a week. *Reddick*, 157 F.3d at 724; *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96-8p.

In support of her argument that the RFC is not supported by substantial evidence, plaintiff references the medical opinion of Dr. Ni that plaintiff was capable of working only part-time. This Court has determined that the ALJ properly rejected Dr. Ni's opinion. *See supra*, section A. For this reason, the ALJ was not required to include Dr. Ni's opined limitations in the RFC. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ is not required to incorporate properly discounted medical opinion evidence into RFC determination).

Plaintiff also cites to the notes of her treating providers regarding her mental health symptoms but, in doing so, identifies no specific functional limitations the ALJ failed to consider in making the RFC determination. Moreover, as discussed previously, the majority of the treatment notes in the record that document plaintiff's mental symptoms relate to a period of time when plaintiff was working near or above SGA levels. This supports the ALJ's ultimate conclusion that plaintiff was able to work despite her impairments. Contrary to

plaintiff's argument, these treatment notes do not establish that plaintiff was more limited than determined by the ALJ.

C. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff also argues the ALJ erred by finding her testimony not credible. Dkt. 16 at 9-12. Specifically, plaintiff argues the ALJ failed to analyze the factors required by SSR 96-7p. Dkt. 16 at 9. The ALJ found plaintiff not credible because: (1) the evidence of record, including plaintiff's work history, showed that plaintiff's impairments were not disabling; (2) the treatment record does not establish the presence of disabling symptoms; (3) plaintiff refused treatment options, including medication, and received scant mental health treatment; (4) plaintiff made inconsistent reports regarding her mental health symptoms; (5) plaintiff's work ended for non-disability related reasons; and (6) plaintiff worked with her impairments and the record does not indicate plaintiff's symptoms worsened since this time. AR at 26-27. The ALJ's rejection of plaintiff's testimony is supported by substantial evidence.

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing

that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Additionally, that some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

As a threshold matter, to the extent that the Commissioner contends the applicable standard of review does not require the ALJ to provide "clear and convincing" reasons for rejecting a claimant's testimony, this argument is foreclosed. Dkt. 18 at 5 n 3 (citing 20 § C.F.R. 416.929, SSR 96–7p). As discussed above, the Ninth Circuit requires this Court in reviewing an ALJ's treatment of a claimant's testimony to apply the following standard: "If there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283–84; *see also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Moreover, the Ninth Circuit recently denied the Commissioner's attempts to undermine the clear and convincing standard, stating the suggestion "lacks any support in precedent and

must be rejected." *See Garrison v. Col*vin, 759 F.3d 995, 1015 n. 18 (9th Cir. 2014) (rejecting the argument that the Court should apply a standard lower than clear and convincing in reviewing ALJ's evaluation of claimant's testimony where there was no evidence of malingering). This Court is bound by the law of the Ninth Circuit. Accordingly, because the ALJ did not find malingering, the Court finds that, in discounting plaintiff's testimony, the ALJ was required to provide clear and convincing reasons that are supported by substantial evidence.

Here, the ALJ's credibility findings are supported by substantial evidence. The ALJ rejected plaintiff's testimony, in part, because plaintiff refused treatment options. AR at 26. For example, the ALJ pointed out that plaintiff declined a referral for mental health medication in October 2011, stating she was not interested. AR at 26 (citing AR at 405). It is notable that at the same visit plaintiff declined a referral to King County Jobs Initiative, a program which her mental health counselor implied could help plaintiff find stable employment despite her criminal history. *See* AR at 405. As the ALJ observed, the evidence of record does not show further treatment for plaintiff's mental impairments after this visit, even though plaintiff claimed that her health prevented her from working after this time. AR at 26; *see* AR at 408-14.

Plaintiff argues that her lack of medication and treatment is due to her lack of insurance, inability to afford medications, and paranoia. *See* AR at 403 (noting plaintiff cannot afford to purchase prescribed medication). However, as defendant points out, when presented with the opportunity to obtain low or no cost medication, plaintiff failed to follow through. AR at 403-05. For these reasons, substantial evidence supports the ALJ's rejection of plaintiff's testimony on this basis. *See Richardson*, 402 U.S. at 401. Although plaintiff argues for a more favorable interpretation of this evidence, when the evidence is susceptible to more than one

rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

This Court notes that the ALJ's credibility assessment finds additional support in the ALJ's rejection of plaintiff's testimony because plaintiff successfully worked with her impairments, and because the record does not indicate plaintiff's symptoms worsened after she reduced her hours in January 2012, or after she stopped working in May 2012. AR at 27. As previously discussed, substantial evidence in the record demonstrates that plaintiff retained the ability to perform work at substantial gainful levels in 2011 despite her impairments. *See supra*, section A. Additionally, as observed by the ALJ, plaintiff's medical records from 2012, the relevant period in this claim, do not indicate a worsening in plaintiff's mental health symptoms. Indeed, plaintiff's mental impairments get only one brief reference in the three treatment visits from this period. *See* AR at 408-14 (noting at AR 409 that plaintiff "is positive for anhedonia, is anxious.").

Plaintiff argues that the ALJ's rejection of plaintiff's testimony on this basis is not supported by substantial evidence because plaintiff testified that she required special conditions, in particular a flexible schedule, to sustain her past work. Dkt. 16 at 10 (citing AR at 37), 12. Work performed under special conditions can show that an individual does not have the ability to perform substantial gainful activity, despite earnings at or above the presumptive threshold for SGA. *See* 20 C.F.R. §§ 404.1573(c), 416.973(c). Here, however, instead of making the argument at the administrative hearing that her work in 2011 was performed under special conditions, and therefore not SGA, plaintiff elected to amend her alleged disability onset date to a date when she was earning below the presumptive threshold for SGA. In doing so, plaintiff precluded meaningful analysis of whether her flexible work schedule constituted special conditions sufficient to show that she was incapable of performing SGA. By amending

her alleged disability onset date, plaintiff effectively conceded that her work in 2011 was performed SGA levels. Plaintiff's current position on this issue is inconsistent with plaintiff's position at the administrative hearing and is not persuasive. As such, this Court finds the ALJ provided clear and convincing reasons supported by substantial evidence to reject plaintiff's testimony.

The ALJ also noted that plaintiff's most recent job ended for non-disability related reasons, and suggested that plaintiff's difficulty finding and sustaining work was attributable to plaintiff's criminal history, and not the symptoms and limitations arising from plaintiff's mental impairments. AR at 27; *see also* AR at 40 (plaintiff testifying her work ended in May 2012 for non-disability related reasons). These are clear and convincing reasons supported by substantial evidence sufficient to reject plaintiff's testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment). For example, the ALJ observed that plaintiff's long-time job with the Parks Department ended in 2007 because a background check would have revealed plaintiff's criminal history, and not due to plaintiff's mental impairments. AR at 27 (citing AR at 373). The ALJ also pointed to plaintiff's statements to her mental health counselors that her criminal record interfered with her ability to find and retain work. AR at 27 (citing AR at 384, 386); *accord* AR at 373, 390, 405. Substantial evidence supports the ALJ's rejection of plaintiff's testimony on this basis. *See Bruton*, 268 F.3d at 828.

Plaintiff also raises issue with the remaining reasons offered by the ALJ to reject plaintiff's credibility. However, that some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148;

*see also Bray v. Comm'r of Soc Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on an improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record"). This Court already has determined that the ALJ's rejection of plaintiff's testimony is supported by substantial evidence. For these reasons, the ALJ's assessment of plaintiff's credibility is affirmed.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 20, 2015**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 23, 2015**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 5th day of January, 2015.

James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge